1808.

FRAZER
*v.*
TUNIS.

---

RUGAN and another, assignees of SAMUEL WEST a bankrupt, *against* WILLIAM WEST.

*Saturday*,
January 2.

THIS was an action of *Trover* which was tried under the general issue before BRACKENRIDGE J. at a *Nisi Prius* in *December* last. *Samuel West* was the surviving partner of *John West*, and an administrator to his estate, in which characters he was possessed of all the personal estate of *John*, and traded upon it for his own account from 1797, the year in which *John* died, to the autumn of 1800. The defendant was the guardian of *John West's* children, and on the 7th and 8th *October* 1800, obtained from *Samuel*, who was at that time embarrassed, an assignment of several bonds, notes &c. in trust for the children. On the 25th *November* 1800 a commission of bankruptcy was issued against *Samuel*, under which he was declared bankrupt; and the plaintiffs, who were chosen assignees, instituted the present action to recover the property thus assigned to the defendant.

The counsel for the plaintiffs, after opening their case, gave in evidence the commission of bankruptcy, and the assignment duly acknowledged before a judge of this court; and they then offered in evidence the original proceedings before the commissioners, which had been filed in the clerk's office of the District

The 56th section of the U. S. bankrupt act, which makes the commission and assignment conclusive evidence of the trading and act of bankruptcy in all cases where the assignees shall *prosecute any debtor* of the bankrupt for any debt *duty* or *demand*, does not apply to an action of *trover* by the assignees. The proceedings by the Commissioners of

bankrupt are *finished* within the 51st section, when the commissioners have proceeded on the commission, examined the bankrupt and other witnesses, admitted the creditors to prove their debts, and assigned the bankrupt's estate. And when filed in the District Court, certified copies thereof are *prima facie* evidence against all persons, of the commission, trading, and act of bankruptcy.

1808.

RUGAN
v.
WEST.

Court, including all the examinations of the bankrupt up to the time of his certificate. The *commission and assignment* were proposed as evidence of the issuing of the commission, and of *Samuel West's* being a trader and bankrupt at the time mentioned therein, agreeably to the 56th section of the bankrupt act of the *United States*, passed 4th *April* 1800, which is as follows: " In all cases where the assignees shall prosecute " any *debtor* of the bankrupt for any *debt, duty or demand*, the " commission or a certified copy thereof and the assignment of " the commissioners of the bankrupt's estate, shall be conclu- " sive evidence of the issuing the commission and of the person " named therein being a trader and bankrupt at the time men- " tioned therein." The *proceedings* were offered as evidence of the state and condition of the bankrupt's affairs, and the course of his proceedings, at and before his bankruptcy, as far as they appeared in his examinations, agreeably to the 51st section, which is in these words; " The said commissioners shall once " in every year carefully file in the clerk's office of the District " Court, all the proceedings had in every case before them and " which shall have been *finished*, including the commissions, " examinations, dividends, entries, and other determinations of " the said commissioners, in which office the final certificate of " the said bankrupt may also be recorded; all which proceed- " ings shall remain *of record;* and certified copies thereof shall " be admitted as evidence in all courts *in like manner as the* " *copies of the proceedings of the District Court are admitted in* " *other cases.*"

The evidence offered under the 51st section was objected to as being inadmissible for any purpose in a suit between these parties; and it was also objected that the commission and assignment could not be evidence under the 56th section, inasmuch as the defendant was not in any sense of the word a *debtor* of the bankrupt. Of the same opinion on both points was the court.

The plaintiff's counsel then offered the deposition of *Thomas Fisher* taken before the commissioners, and filed with the other proceedings, to prove the act of bankruptcy, he being dead. This evidence was also objected to, and overruled; and the plaintiff's not being prepared with other evidence to these points, a nonsuit was entered with leave to move in bank to set it aside.

At the request of the plaintiff's counsel, the reasons for the opinions of the court were reduced to writing and filed; in substance they were these. His Honour was of opinion, that between these parties the 50th section had no effect upon the evidence, because the defendant was not a *debtor* within either the common or strict acceptation of the term. The action of *trover* supposes a trespasser; it is founded in *tort;* and where no money has been received, it would be a fiction to treat the defendant as a debtor, not to be allowed for the purpose of extending an exception to the rules of evidence. The word *debtor* in the 56th section cannot be construed to include all other defendants; and if it could, so as to comprehend an adverse claimant or possessor of the bankrupt's property, it would be unreasonable so to construe it. It cannot be material to the *debtor* when he became indebted, or when the act of bankruptcy was committed; or if it should, it would be a hardship, and would furnish a reason for confining the conclusiveness of the *ex parte* evidence to the case of a debtor commonly so called; *ex parte* evidence, because there is no provision in the law for giving a debtor the privilege of becoming a party to the proceedings before the commissioners, or of a trial by jury in case of a contested fact. But where the property in question is alleged to have come to the possession of the defendant after the bankruptcy, and to have been converted by him, his defence may rest upon the time of the bankruptcy; and it would therefore be still harder to extend by construction this *ex parte* conclusiveness to the case of such a defendant. It seems necessary to confine the innovations by this act on the common law rules of evidence, to the case of debtor or creditor in the common or strict legal and technical acceptation of the term. The creditor is barred as to certain facts, because he may make himself a party; and the debtor to a certain extent, although he cannot make himself a party. Under the 51st section the proceedings before the commissioners, filed in the District Court, may be given in evidence in bar of a creditor and debtor, conclusive as to some facts, and *prima facie* as to all; but in the case of such defendants as do not come under the description of creditor and debtor strictly taken, they cannot be evidence as to the testimony before the commissioners, unless it be where it is lost and not in the power of the party to produce, or not in their power to have produced since the institution of the suit. The present suit was brought in *Sep-*

1808.

Rugan
*v.*
West.

*tember* 1801; and *Fisher* died only during the last *Nisi Prius;* so that there was an opportunity to obtain the testimony by deposition, giving the defendant liberty to cross examine. The result of the whole is, that the defendant has a right to expect that every step in establishing the bankruptcy and the assignment will be supported by proof originally made, and where he can have an opportunity to cross examine.

A motion was accordingly made to set aside the nonsuit, and was argued for the plaintiffs by *Gibson* and *Rawle*, and by *E. Tilghman* and *Ingersoll* for the defendant. The Chief Justice, who had been a commissioner in the case, did not sit upon the argument; and Judges SMITH and BRACKENRIDGE sat solely for the purpose of constituting a court, as the former had expressed an opinion upon the material points opposed to that of Judge BRACKENRIDGE, when the cause was opened before him at a *Nisi Prius* in *July* 1807, and was interrupted by the sickness of a juror.

The counsel for the plaintiff argued that the commission and assignment were by the 56th section, made conclusive evidence between these parties, because the term *debtor* is not to be taken in a strict technical sense, but as a correlative to debt, *duty*, or *demand*, and as expressly descriptive of a person *prosecuted*, which implies an action for a *tort*, as well as for a breach of contract. That it is the policy of the law to make them conclusive of the trading and bankruptcy against every body; because from the extent of the *United States*, it would be infinitely inconvenient to be called upon for proof of these facts, at a great distance from the place where they occurred. That if by the section they are conclusive only upon debtors, strictly speaking, still the case of this defendant is embraced, who is in substance a debtor, although pursued by an action of trover; for the section does not speak of any *form* of action, but leaves that to the assignees, and merely regards the character of the defendant, as being subject to a demand by the bankrupt whom they represent.

The objection to reading the proceedings under the 51st section went at the trial upon two grounds: first, that they were not finished; but this is clearly the case when all the summary proceedings of the commissioners are at an end, although

dividends may remain to be made. When the bankrupt has obtained his certificate, there is a finishing of the proceedings within the meaning of this section. The second ground was that they were evidence only between parties and privies, and that none but creditors can become parties. Taking this to be the case, it is a clear principle that whoever refuses to come in, when it is lawful for him, is as much concluded as an actual party; and then the question is whether the representatives of *John West* could have come in; and where was the impediment. There was a clear and certain debt due from the bankrupt; and but for the security, the whole might have been proved. The security does not alter the case, whether justly or unjustly obtained. If unjustly, it is out of the question. If justly, they might have applied for the sale of it, and have come in for the residue; and their choosing to hold to the security cannot make them less a creditor; if it is insufficient, the certificate bars as to the deficiency, and this shews them to be a creditor. But the bankrupt was a creditor of his own estate for this very debt, and might have proved it as administrator under his commission. *Ex parte Leeke* (a). *Co. B. L.* 133. 137. If the estate of *John West* is barred, of course the representatives of that estate are barred as privies. It is, however, a misconstruction of this section to confine it to creditors. The words that the " proceedings shall remain *of record*" make them evidence without any thing further; and as they are so to an equal extent with the proceedings of the District Court *in rem*, to which the proceedings under a commission of bankrupt are analogous, they bind all the world. Certainly they are evidence *primâ facie;* for as the 56th section is conclusive upon debtors, and creditors are bound as parties without a special provision, the only object of the 51st section is to make them evidence between persons of another description, for which the impartial office of the commissioners was a sufficient reason. *Janson* v. *Wilson* (b).

*Fisher's* evidence would therefore come in under either construction; and by his death there is an additional reason for it. He could not have been examined under a rule, for he was neither an ancient nor a going witness, and he lived within forty miles of the place of trial; of course we had not been guilty of laches.

(a) 2 *Bro.* 596          (b) *Doug.* 246. (257)

The counsel for the defendant argued upon the effect of the 56th section, that if it made the commission and assignment conclusive evidence between these parties of the facts stated in the section, it must be the same against all the world; in which case a commission would be proof against the suggestion of fraud, concert, and all other defects. In the face of the grossest misconduct in the bankrupt, of a trading and act of bankruptcy preconcerted and merely colourable, in fraud of the law, the commission would itself protect the iniquity by which it was produced. This cannot be the meaning of the section; in the case of *M'Laws*, a bankrupt, Judge *Washington* held that it was not; for upon proof that the whole was a matter of concert between the bankrupt and his friends, as nine tenths of all the bankruptcies in *Pennsylvania* have been, he decided that there was no bankruptcy. The true construction is, that as it is of no importance to the debtor, against him it is conclusive; but against persons claiming adversely to the bankrupt, it has no operation; of course most clearly it is not conclusive in those cases where the bankrupt himself could not sue, and where the assignees come in to defeat an act by which the bankrupt would be estopped. As against *S. West*, the assignments in question are good, be they ever so fraudulent against creditors; and he could never come forward to defeat them, supposing the commission to be set aside; to this defendant therefore, the time and the fact of bankruptcy are all important. But what is decisive against the plaintiffs, is their election to consider the defendant as a wrong doer; they have waived the contract, and proceeded for the tort; and they shall not by their action deny that he is a debtor, and deprive him of the rights which he might have in that character, and at the same time treat him as a debtor, for the purpose of exposing him to consequences to which he is not liable as a wrong doer.

Under the 51st section these proceedings are not evidence, because subsequent proceedings remain to be had. The filing of the *dividends* implies that nothing more is to be done; and the contrary argument supposes that the commissioners may, from time to time file the proceedings in any one case, part at one time, and the residue at another, which the section does not permit. The whole must be filed and shewn together, that no improper effect may be produced by a part. But at most they are evidence like the record of a judgment, only between

1808.

RUGAN
v.
WEST.

parties and privies, that is, between creditors and purchasers. Now in the first place, where a person is possessed of a security, he is not obliged to give it up, and until he does, he cannot prove his debt, or become a party, and is to the present purpose no creditor. *Co. B. L.* 119. But further, if the defendant is treated as a creditor of *S. West*, at the time of the bankruptcy, it is because the assignments are looked upon as an act of bankruptcy, or as being subsequent to such an act, which is the very question. So that whether creditor or not, even by the plaintiff's argument, may depend upon the time of bankruptcy, which time they argue to be fixed against the defendant, because he is a creditor. The argument is in a circle.

Supposing, however, the entries and determinations to be evidence against every body, the depositions are so only upon the common terms, that is, where the witness cannot be had, or is dead, and there have been no laches in obtaining his testimony, which certainly cannot be said in this case.

YEATES J. The questions raised in this case depend chiefly on the true construction of the act of Congress of the 4th *April* 1800; the 51st section whereof is in these words: " The said " commissioners shall once in every year carefully file in the " clerk's office of the District Court all the proceedings had in " every case before them, and which shall have been *finished*, " including the *commissions, examinations,* dividends, entries, " and *other determinations* of the said commissioners, in which " office the final certificate of the bankrupt may also be record- " ed; all which proceedings shall remain of record in the said " office, and certified copies thereof may be admitted as evi- " dence in *all courts*, in *like manner* as the copies of the pro- " ceedings of the said District Court are admitted in other " cases." And the 56th section runs thus: " In all cases where " the assignees shall prosecute *any debtor* of the bankrupt for " any *debt, duty* or *demand*, the commission or a certified copy " thereof and the assignment of the commissioners of the bank- " rupt's estate, shall be *conclusive evidence* of the issuing the " *commission,* 'and of the person named therein being a *trader* " and bankrupt at the time mentioned therein."

I have no hesitation in declaring that this 56th section is not referable to an action of trover and conversion. The words " any debtor" exclude suits founded in *tort*, from the operation

1808.

RUGAN
v.
WEST.

of the clause; and in the interpretation of a law, we are not at liberty to drop any expressions made use of by the lawgivers. Besides, there is a solid ground of distinction between causes of action which arise *ex contractu*, and those which arise *ex delicto*. It is of no moment to the *debtor* whether the suit is instituted by his creditor originally, or by his assignees, or when the supposed act of bankruptcy was committed. His defence is precisely the same in both cases; and by the 13th section of the act a provision is introduced that " where a debtor shall have *bona* " *fide* paid his debt to any bankrupt, without notice that such " person was bankrupt, he or she shall not be liable to pay the " same to the assignees." But in cases of persons claiming by from or under such bankrupt, adversely to the assignment, it is all important to them that they should be at liberty to contest at law the commission, trading, bankruptcy, and the time of the act of bankruptcy committed. *To preclude such persons from* their full defence, and to conclude them by proceedings to which they neither were nor could be parties, would in my idea be a violation of the first principles of justice. Hence it is that by the 2d section of the act, it is directed that the petitioning creditors shall give bond, conditioned for the proving their debts, as well before the commissioners, as on a trial at law, in case the due issuing forth the commission shall be *contested*, and also for proving the party a bankrupt. And such has been the usage under the bankrupt laws of *Great Britain*, of the *United States*, and of this Commonwealth, and so it must have been necessarily determined in the case of *M'Laws* the saddler, by Mr. Justice *Washington*, in the Circuit Court of the *United States*.

The 51st section is attended with more difficulty. The words " *when finished*" may I think be fairly satisfied by the commissioners' proceeding on the commission awarded, declaring that the party was a bankrupt on due examination and sufficient cause, examining the bankrupt and other witnesses, admitting the creditors to prove their debts, and assigning the estate and effects of the bankrupt to such person or persons as the major part in value of such creditors according to their several debts proved, should appoint.

It is declared by this clause that the proceedings shall remain of record in the office of the clerk of the District Court; and copies thereof shall be admitted in evidence in all courts, *in like*

*manner* as the copies of the proceedings of the District Court are admitted in other cases.

On the part of the plaintiffs it has been contended, that the proceedings being declared matter of record, necessarily become evidence without other words; and being put on the same footing as the proceedings of the District Court in other cases, which has exclusive maritime jurisdiction and in the instances of their proceeding *in rem,* all the world are supposed to be parties, and to be concluded by the subject matter determined. The defendant's counsel have insisted that the clause must be construed strictly, as an innovation on the rules of evidence at common law; and that as the act assimilates the proceedings of the commissioners, considered as evidence, to judgments, the former can only be read in such cases where the judgments could be received in evidence; that judgments are not admissible in evidence except as between the parties and privies; and consequently as the defendant neither was nor could be a party to the proceedings before the commissioners, those proceedings were as to him *res inter alios acta;* and he could not be affected thereby in any shape.

The resolutions under the *British* acts of bankruptcy throw no light on the present question. They vary in point of expression from our statute, as far as relates to the subject under consideration. The statute of 5 *G.* 2. *c.* 30. *s.* 41. prescribes that " a true copy of the record of such commissions, depositions, " and proceedings, or other matters and things, shall and may " *upon all occasions* be given in evidence, to prove such com- " mission and the bankruptcy of such person, against whom " such commission hath been or shall be awarded, or *other* " *matters or things,* any law, usage, or custom to the contrary " notwithstanding." In *Janson* v. *Wilson, Doug.* 246. (257) the Court of *B. R.* were of opinion that the depositions of the act of bankruptcy when recorded, are evidence in an action at law to prove the *precise time* when the act of bankruptcy was committed, if specified therein. But it is said that it has *not* been determined whether the depositions may be contradicted. *Cook. B. L.* 562. 4 *Ed.*

I consider the bankrupt law as a system of policy devised by the legislature of the union for great national purposes; and accommodated to the circumstances and local situation of the *United States.* Many failures must necessarily take place in a

RUGAN
*v.*
WEST.

country of so great extent, where commercial enterprise prevails in a high degree. It would be inconvenient in such a state of things, that in every case where a bankruptcy occurs, parol proof should be deemed absolutely necessary to be made of the trading and act of bankruptcy, however remote the trial might be from the scene of action. I adopt the language of Lord *Mansfield* in the case cited from *Douglas*, that " the legisla-" ture considered the commissioners as indifferent persons, " examining the witnesses with impartiality, and taking care of " the interest of all parties." In the case of the death of any witness examined before them, his testimony is perpetuated. The law seems not to be confined to those who are or might be parties to the proceedings. Debtors of the bankrupt have no such opportunity of being made *parties*, nor have distant creditors; and yet with respect to both classes, it is admitted that the proceedings may be read in evidence. Besides, it strikes me forcibly, that if the 51st section is not considered to have a general operation on this and similar cases of adverse claims against the assignees, then it is wholly nugatory and superfluous; it can have no possible object. The 56th section makes the record of the commission *conclusive* evidence in the case of any *debtors*, and presupposes that a general provision had been made as to receiving such record in evidence. But by confining its *conclusive* effect to the cases of debtors, it leaves other instances open to be decided on by a jury, on a fair comparison and contrast of all the testimony exhibited on the trial.

The result upon the whole then is, that the proceedings of the commissioners when recorded should be received as *prima facie* evidence of the commission, trading, and act of bankruptcy, in the present instance; but that it is competent to the defendant to contest the same by other proofs; and that the deposition of *Thomas Fisher* who died since the examination should be received in evidence.

SMITH J. and BRACKENRIDGE J. remaining of their former opinion, the judgment of the court was that the

Nonsuit be set aside.